Rarely do I have to raise any podiums. Good morning, your honors. May it please the court. My name is David Linehan and I'm representing the City of Sammamish, Washington. This case turns on the faithful application of this court's familiar test for granting a preliminary injunction. Here, the district court erred, indeed abused its discretion in applying three court notes to be entitled to the extraordinary remedy of a preliminary injunction. The moving party here, the county, must show a likelihood of success on the merits. And the key question here is to identify the merits of what? Success in proving what? Why isn't this case moot at this point, now that the construction has been completed? Well, your honor, this court's test for mootness is whether this court may still award any effective or meaningful relief. And here, yes, construction has been completed, but the signs can always be restored and returned to their original location. Sure, but doesn't that go to the merits? We're at preliminary injunction. Correct. And I think that the error in this case was for the court to I mean, you ultimately prevail. It may be that the remedy order is to remove or correct whatever deficiencies you're claiming to be. But at this point, given that construction is complete, how how will you get any relief from the ruling on the preliminary injunction? Well, at this point, there's really no dispute that the only thing preventing the city from requiring the stop signs to be relocated and restored to their original location is the court's preliminary injunction order. The order continues beyond just the construction to say the city may not take any action to relocate the signs. But I'm looking at the scope of the district court's injunction prohibiting the city from taking any additional actions to impede or delay. I mean, there's nothing to impede or delay now that it's done. What's left is correction, which seems to me to be the merits. Well, so you need to read all the way to the end of that paragraph two of the district court's injunction, where it says not just impede or delay construction, but also to require relocation of the stop signs. Why isn't that also the merits? In other words, I know in this mighty dispute, which I'm so thrilled has made it to our court on whether the stop sign should be turned this way or that way. You both have, each side has arguments about that. That will be the ultimate issue on the merits. But as Judge Wendt points out, all that this injunction is doing is in effect preserving what is now the status quo. Well, I'm glad you raised that issue of preserving the status quo because in this case, the court is allowing the county to switch the signs. Right, but at this point, it's simply holding everything where things presently are, correct? That's true. Where they presently are today, the stop signs have been relocated per the county's desires. The case is ongoing below, right? The case will resume below. Because I'm looking at the last page of the preliminary injunction order. Effective immediately, King County is authorized to resume construction. Well, then that's a done deal. It's done. And then number two, the city shall not take any additional actions to impede or delay King County's construction, including attempts to require stop signs oriented towards trail users. That's, I'm finishing the sentence that you were referencing. It's done. But the stop signs have been moved, but the court says we can't take any action to relocate them. And right now, it's only that injunction that's preventing us from bringing a local administrative code enforcement action because that is in violation of our city's code and our city's engineering standards. So it's only that injunction that's keeping us from bringing an enforcement action. How is it different from the merits now? If you win, the stop signs are going to be reoriented, and that's the relief that you're ultimately seeking. Correct. And we are asking this court to recognize that as we presented in the preliminary injunction pleadings below, there is a very serious safety issue at this intersection right now with the stop signs having been relocated. And as the city's engineers decide to attempt made by the parties to get a like a independent arbitrator or something like that, they say the safety concerns tip their way. You say it tips your way. And I mean, this forgive me, I'm sure this is unfair, but it seems like an awful lot of time, energy expense has been exercised here on what is ultimately a single dispute that one would think some third party who has expertise on safety could have resolved if the two parties had agreed to let that person resolve it. Was any attempt made to do that? Well, there were two competing expert opinions, as you pointed out, and there was a mediation that occurred. That mediation didn't go anywhere. Anybody talk about a four-way stop in the meantime? That's been analyzed. We're talking about safety. I mean, everybody will be unhappy that way because the homeowners don't want to stop and the trail users don't want to stop. Well, it's not just the homeowners, but... Well, it's kind of hard for us to get our arms around exactly why we're focusing on the relocation of stop signs, not an issue that makes us to it very often, and for an interim period. In fact, Lisa, my next question, what's left to this case? I mean, what issues need to be tried? Well, so I'll answer both phases of your question, Your Honor. With respect to how this, why this case is here, that's a good question. We thought this was a matter for local resolution and it was the county who decided to file a federal court case and bring a preliminary injunction motion and ask a federal district judge to decide which way the stop signs should go. We don't think that was appropriate to begin with. There's no federal subject matter jurisdiction there and we've raised that issue below. But in the meantime, we're left with having to defend this preliminary or try to overturn this preliminary injunction, which we believe there's a very serious safety issue. And while the case plays out on the merits below, the city believes it's extremely important that the safety of the citizens be paramount and have the stop signs reoriented while, i.e., to restore the original status quo, the status quo that had existed for more than 10 years, without a single reported accident at this intersection. And so in order to... There wasn't a paved trail there at the time, so I'm not sure that history speaks very well to the situation we have now. But there won't be a paved trail, a completed paved trail for the entire segment for several years because there's still another unpaved segment right next to it that won't, that's just now in the very preliminary shoreline permitting phase. So it's going to be years before there's actually a paved trail that might result in much higher volumes of use. And the city has always said, we're very willing to reconsider the traffic engineering analysis when those volumes start to materialize. But in the foreseeable future, that won't happen. So what is it that's left to be tried? The safety issues? What's left to be tried is what we think the district court... Obviously, there is a dispute here about the, you know, a competing analysis of traffic engineers over trail design. But we think that deserves a full hearing and not short-circuited through a preliminary injunction that essentially makes everything moot. We don't think that was an appropriate way to resolve this issue, and that's why we're here asking the court to vacate the injunction and allow the city to reverse the stop signs pending the final determination on the merits. What's the timeline for the final determination? I mean, has the action proceeded in district court in the meantime? It has been basically on hold while this preliminary injunction appeal is pending. So nothing has actually happened. The city does have a pending motion to dismiss for lack of subject matter jurisdiction in the... And that's something we'd have to entertain. Although, as I looked at your brief, it seems it's tied to your effort to dismiss, I forget, 1983 count or something. So, although there was an objection stated in your opening brief, it seems to me that you're not pressing an argument here that we currently lack federal jurisdiction. That's something that will come back to the district court later? Correct. Originally, yeah. I'm sorry, forgive me. There was something that was not addressed in either party's briefs, but I thought maybe you would and your adversary would comment on it, which goes to this question of whether the city even has authority to regulate the county's construction, including the stop signs at the intersection. So I'm looking first at Sammamish, thank you, municipal code 14.30.010, which seems to be limited, this goes to the need for a right-of-way use permit, seems to be limited to private use, and this is not a private use by the would be section 16.15.050, which goes to the question of clearing and grading permits, but again, seems to be limited to ways that are not involved here. So, I'm wondering whether if the county's use is a public use, whether the city has any regulation that requires a permit of the sort you say is required? Well, Your Honor, sorry, I'll have to pay a little, maybe perhaps during my rebuttal period or while I'm waiting, I might review the statute or the code sections a little more closely, but it's always been the city's position that any time you're doing work in the city right-of-way, there are some narrow exceptions for public utilities that the standards are slightly different or there are certain exemptions that might apply there, but the county's not doing utility work here, the county's just acting like a private developer and building a trail. I'm not sure it's acting as a private, it's acting pursuant to various federal statutes that give it the right to create, for public purposes, a trail. The underlying federal statutes all speak in terms of creating a public trail. The point was to take these old railroad corridors and while hoping that maybe someday the railroads would come back, in the meantime, allowing them to be made into very nice trails for public use. So I'm not sure that they're acting like a private developer at all. So, Your Honor, the statute, the federal statute that allows rail banking and conversion of these former railroad corridors into recreational trails, it doesn't require that a public entity be the trail sponsor. Any private entity can also be a trail sponsor. It's simply a question of that sponsor's ability to be financially responsible for the trail and to preserve it for future railroad reactivation if necessary. So it's not necessarily a public function, it just happens to be a public entity that's doing it in this case. Well, that's why, if you would, maybe take a look at those regs because they do seem to be limited to private use. These are your regs and I could be totally wrong. I've had relatively few cases involving those regulations. Correct. Correct. Did you want to save the rest of your time? Yes, please. Thank you. May it please the Court, David Hackett, Senior Deputy Prosecutor representing King County in this matter. After the city issued a stop work order, King County moved forward and obtained the preliminary injunction. Construction was completed. The trail is open right now. You can ride Segment A, you can walk Segment A, you can push a baby cart, you can do whatever you want. As a result, because the injunction was limited to preventing the city from impeding or impairing King County's construction of that trail, this issue is moot. It needs to be remanded back to the District Court. What about the stop signs? That is a... Seems to be all about stop signs. Okay, the stop signs could be moved. Yes. Does that mean it's not moot? No, it means that that's what's to be determined by the District Court on the merits. As we point out in our briefing, there are essentially three issues that deal with the city's regulatory authority. The city wants to take itself as the default regulator, that if the federal government steps out and if the Washington Utilities Commission steps out, that all of a sudden, hey, we're still here. But the problem was they were never here. Under the Trails Act, law remains in the status quo during rail banking. There are a whole set of issues there we'd get to, but I'm still... I'm stuck on the mootness question now. The city's position is that there is something that can be done to afford relief in the meantime, that is moving the stop signs. Is that not factually true? That is factually true, but it is not related to the preliminary injunction. It's not... Isn't it the preliminary injunction that keeps them from issuing an order to move the stop signs or to even go out and do it themselves? I suspect they've got their own road crew that could move the stop signs, but for the injunction. The preliminary injunction says only that King County is authorized to resume construction of South Segment A, including pavement and construction at the intersections. And then by stipulation of the parties, the city shall not take any additional actions to impede or delay King County's construction of the intersections, including any attempts to orient the stop signs toward trail users. Well, let me see if I understand this. Is it your position that they can't move the stop signs, but only because of a voluntary agreement they entered, that that was not part of the court's order? It is our position that the preliminary injunction does not preclude them from doing that. However, on the merits, the District Court of Courts... So, if that's the case, you're telling the city, you can move the stop signs and we'll still fight it out in court. Okay, it sounds like it's got to be moved, but I don't really hear you saying that it's okay for the city to move the stop signs. Under University of Texas v. Kamanish, which is the 1981 U.S. Supreme Court case, the court's review of a preliminary injunction on the mootness question is limited to the four forms of that injunction. My question is, is it the county's position that the city can either order the relocation of the stop signs or relocate them itself, right now, while the preliminary injunction is in place? I believe that the county... That's a yes or no question, so get to a yes or a no. Yes, I will get definitely to a yes or a no. I believe that there is nothing about the preliminary injunction that prevents the city from doing that. Yes, the city could do that. However, we would, of course, go to the district court and request another injunction if they indeed took action on that. My bigger point on mootness, which is an Article III question, is that under Kamanish, you have to look at the four corners of the preliminary injunction order, and that is addressed, rightly or wrongly, perhaps without sufficient foresight on how far the city would take this toward efforts to impede or delay construction. Construction is finished, the trail is open, and at this point, the question of where the stop signs ultimately will be placed is the merits question that is best decided by the district court with a full record before it. I don't understand how you got to your yes answer to Judge Clifton's question. The second paragraph of the injunction says, the city shall not take any additional actions to impede or delay King County's construction of the intersection at 206th Avenue, Southeast and Southeast 33rd Street, including any attempts to orient the stop signs toward trail users. You're saying that you're reading the word, including, to be limited to steps taken during the period of construction. Is that why you get to your yes answer? Yes, I think that comma leads to the yes answer because they can't impede or delay King County's construction, including any attempts to orient the stop signs toward trail users. It requires stop signs oriented towards trail users. That's the language. Yes, it requires the city to not impede our construction where we place those, oriented toward the street. Let me ask you this. Council for the city indicates that's all about public safety in this case, but I take it is the county's position as well that it is its primary interest in this case is about safety. Yes. Then it just seems to me, stepping back for a moment, that the interests of the county and the city should be aligned. There's just a dispute over which way creates the maximum safety conditions. Am I right in characterizing it that way? I believe that that is the nut of the dispute between the two parties, but it is the county that's responsible for constructing the trail and the county that's responsible for liability. I understand that, but the larger interests are essentially aligned. It just seems to be a lot of litigation argument when your interests are really aligned. There's some reference as to an attempt to mediate this case that council referenced. Don't tell me why it didn't work or what was discussed, but was this early on during the parties attempted to mediate it? Yes, very early on. I should point out that this matter already went through a hearing examiner once and the city lost. The county has engineering authority. There's always one party wins and the other one loses, but ultimately when it comes to the merits determination, it may flip the other way. That is very true, but in this case, the issue has been addressed. The city continues to fight the issue. It's the city that filed this appeal. It's the city that issued the stop work order. The county simply wants its trail to go forward. The question of whether that trail can go forward then, if you have an inability to come to a mediated settlement, grant you, this is a federal case over a stop sign. I can understand how none of us want to be here arguing a federal case over a stop sign, but nonetheless, the ultimate answer on the merits will be dictated by federal law. Is there a way to stop it? Sometimes. I think there are... A stop sign. There is potentially a way. I don't know if the party is aware of this, but the circuit has highly skilled mediators at the appellate level here in the court. You don't have to make a commitment or express your desire to participate at this point, but if the parties could confer after this hearing is over and if there is an interest by both sides to take advantage of that mediation program, then within 10 days or so, please let us know. We'll certainly do that. I have participated in that program before and found it to be helpful. Ultimately, in this case, it will be our position, as it is before this court, that the city has no authority to regulate these intersections because of the way they were established. As a practical matter, would you have any objection to Judge Clifton's suggestion that there be stop signs in both directions? That would be an invalid traffic control measure under both AASHTO, which are the standards that apply to the trail, and under state law. You're saying if the parties agreed to it, they couldn't agree to it? Parties could not agree to that because under state law, that's an invalid way to control pedestrian traffic. But that's not quite my question. Are you saying that if all the relevant governing authorities in a community, the city, the county, both agree that we'll waive whatever the requirements are under the law and we'll have a four-way stop sign, they can't do that? I have myself thought that perhaps that could be an elegant solution, but ultimately an acceptable solution is dictated by AASHTO, by engineering standards, by engineering opinion, and most importantly, by the RCWs, which do not allow stop signs to control right-of-way for pedestrians in our state. If people want to do it, they can do it. I understand that the city and county have the same goals, but they also have a set of constituents that aren't identical, and different people see things in different ways. So I will join my colleagues in encouraging a resolution, but if it's not going to come and if we don't decide this case is moot, I would like to raise one question on the board. It seems to me the premise of the county's argument and of the district court's conclusion is that there's a train here. Only we know there's not a train here. The federal preemption, which would limit the city's police powers, all that's talking about a train, and the Surface Transportation Board has indicated it doesn't think the federal law speaks to trails beyond the Trail Act, which provides for the rail banking. I'm puzzled as to why it is that the county takes the position that federal law somehow preempts the city's regulatory authority. Well, I think it begs the question of why would the city have regulatory authority? We're not talking about the whole corridor with this case. We're talking about intersections. And when the train was there, that ability to regulate intersections did not lie with the city at all. Because there was a train there. Exactly. But there's not a train there anymore. Well, Congress spoke very clearly in the Trails Act. I don't think so, and the Surface Transportation Board doesn't seem to think so. I don't believe that any of the cases that are cited by the city from the Surface Transportation Board deal with regulation of intersections by cities as a default. Nor do I see any cases The case cited to us first in the city's brief from the Surface Transportation Board, a trail use must comply with state and local land use plans, zoning ordinances, and public health and safety legislation. That seems to speak to how regulations apply. If there were a train there, then federal law clearly preempts what the local authorities can do. But there's not a train there. I don't believe it speaks to intersections, which are special even in railroad corridors. But the language of the Trails Act... Well, let me look at your brief. You cite the act, and it says, defining the jurisdiction of the Surface Transportation Board. And this is the part that is in italics in your brief. Except as otherwise provided in this part, the remedies provided in this part with respect to regulation of rail transportation are exclusive and preempt. And you set that up, the sentence leading into it, talks about the city had very little regulatory authority over federal rail corridors. But what the statute says is rail transportation. And we're not talking about rail transportation anymore. So I'm baffled as to why it is your argument assumes that there's a train there. I mean, it seems to me that the federal preemption is tied to the railroad transportation, not to land that used to be and maybe in the future will again be a trade track. But right now is something other than that. Our argument is tied, I think, exclusively to the language of the Trails Act, which says that such interim use, trail use, shall not be treated for purposes of any law or rule of law as an abandonment of the use of right-of-way for railroad purposes. Fine. It's no abandonment. If the railroad decides to put a train there in the future, it can. But I don't see how that language speaks to what the regulatory authority of the local municipality or county or anybody else is. There may be a question, as Judge Rakoff has raised, about whether the municipal code actually gives the city that authority. But your argument is premised on federal preemption. And I simply don't understand how the federal government has an interest in preempting the use of this property not for rail transportation, but for people on bicycles and strollers and walking. I think the federal government has an interest in doing that under the precedence of this circuit in the U.S. Supreme Court, because maintaining the integrity of that corridor is part and parcel, as well as allowing interim trail use. What we're talking about here has absolutely no impact on the ability of a railroad in the future to reclaim the property. There's no abandonment issue here. We're talking about what's being done in the meantime. And I simply do not see the federal statute that you're pointing to as speaking to how it gets used in the meantime, as long as it's not treated as abandonment. We would respectfully disagree with that reading. And that's the type of thing that we would like to fully vet before the district court, in this case consistent with the Friends of Sammamish, which was a prior district court decision on this, that the city did not appeal. But to loop back around to the problem of the city's own code, in order to regulate right-of-way, you have to own a right-of-way. And the deeds in this case did not establish a right-of-way. It is important to note that the city did not argue this below. So this court is reviewing, if you get to the merits, a preliminary injunction that was denied, or that was granted, because the city did not have regulatory authority over the intersections because it possessed only a crossing easement, not a full right-of-way. The city did not argue that below. It is impossible, or at least I think ill-advised, to reverse the district court for abuse of discretion based on an argument that the city failed to make below. So whether you look at this case as moot, which we believe it is, or whether you look at this case on the merits, the district court decided the question on an issue that the city failed to dispute below. And that, by itself, is enough for this court to determine that there was no abuse of discretion, without even getting to possibly more problematic preemption issues that have yet to be fully vetted by the district court. So for these reasons, we would ask the court to either dismiss the case as moot, or to affirm issuance of the preliminary injunction on the merits, based on the argument that the city failed to dispute below. Thank you, counsel. I'd like to begin by addressing Judge Rakoff's question about Sammamish Municipal Code. And it's actually in our appendix to our opening brief. It's SMC section 14.30.010, which is there. It's actually a two-prong language that says, it shall be unlawful for anyone — and then I'm going to skip the first prong and go to the second one — it shall be unlawful for anyone to use any public right-of-way without complying with all provisions of a permit issued by the city. Well, so that's — but there's an ambiguity there, or at least you've correctly focused. But if you read the full language, it is, for anyone to make private use of any public right-of-way without a right-of-way use permit issued by the city, or to use any public right-of-way without complying with all provisions of a permit issued by the city. So the question there is whether the second use of the term use was — picks up the private language from the first clause or does not. And there are arguments both ways on that, it seems to me, because if you look at the — sort of the sense of this provision, it seems to be directed in both clauses at private use. On the other hand, your argument would be the word private only appears in the first clause, not in the second. Correct. So that's the issue I was raising. But I think that's, at a minimum, could go either way. The thrust of this, if you look at the two clauses, is that you need to have a right-of-way permit and that you need to comply with all provisions of the permit. And it wouldn't make sense to limit the first one to private and say that the second applies no matter what, or at least that's the argument why private should be read into both clauses. Well, this issue wasn't really discussed below, so we didn't include the entire — I do know that. I do know that. We didn't include the entire Sammamish Code in here, but suffice it to say, there are many provisions of the Sammamish Code, including the right-of-way provisions and the clearing grading provisions that apply to all persons, not just to private individuals or private developers. So that's how we would address that issue. And if I may, I realize I'm — Well, I'm going to keep you over time anyway. I've got one factual question, which I meant to raise earlier. Sure. And if there's a different view from the county, I'll hear it. At the time the easements were entered into — Mm-hmm. And I understand that was 1972 and 1992. Was a train line operating there, or had the train ceased operation sometime before that? I'm not sure about the 70s and the 90s it had ceased operations. Okay. I was just trying to factually try to figure out how we got to this point. Yeah, I don't know the exact date of when it was discontinued, but I believe by the 90s it was discontinued. Now you can go back to the point you were trying to make. So the point I was going to make was two things. One, to the extent the county now argues that the city actually has no right-of-way at all over these two streets, that it's only a limited railroad crossing easement, there's no right-of-way. Well, King County thought there was right-of-way because it was King County. At the time these easements were acquired, it was unincorporated King County. There was no city of Sammamish. Well, there's a letter in page 103 of the Excerpts of Record, Volume 2, which is a memo from King County's Real Property Division. The real property people at King County writing to the King County executive saying, please sign this easement. And this is their language. The public right-of-way crossing, Burlington Northern's railroad track, will be 206th Avenue SE. Clearly, King County thought it was a right-of-way when it acquired this crossing. And secondly, to say that the easements do not or somehow give the county exclusive use or possession of this corridor, including at 206th and at 33rd SE, or SE 33rd, well, that's just belied by the language in the easements themselves, which talk about an easement for public road purposes, an easement for construction and maintenance of a street. And while those easements do reserve to the railroad some ability to do other things, in fact, pretty broad ability, it says that that ability is limited so as not to interfere with the use of the premises for street purposes. So it's not that the county has unfettered control over these intersections. Given your adversary's statement, which is presumably binding on him, made here at Open Court, that nothing prevents you from initiating now an attempt to turn the stop signs the other direction, why isn't this a matter of boot? Well, Your Honor, this was news to us. Let me say that. It was news to us. And I will say, I agree, if the county says, yeah, city, you can go out and flip the stop signs around while this case plays out of the marriage. They didn't say they'd go to court to stop it. Well, see, that's the thing. It's like a booby trap. We're not... That's exactly what we thought would happen, is that they would go just ask for another eliminated section. No, no, no, they're making a statistical point. But what they're saying is the only thing that you were, as they read the injunction, the only thing that you were forbidden to do was interfere with them putting up the road in the way they wanted, including stop signs. They've done that now. So the injunction by its terms, they say, as they interpret it, no longer applies to future action regarding the stop signs. If you go and try to change it, they're going to go back into court. But that will be an issue for the district court and not an issue for us. So I'm just trying to pin you now. Do you agree that if that is the situation, that this case is moot? Well, if this court agrees that the injunction reads the way the county is now saying it agrees, I would have not wanted to take that position in front of Judge Kuhnauer, trust me. But if the county now agrees with that... But now you can't be cited for violating, if in fact... I think if you're going to get me a get out of jail free card, because that's where I would wind up. He may throw you in jail for something else. Then we would agree the case is moot. All right. Thank you. Thank you very much, counsel. The matter is submitted for decision.
judges: Clifton, Nguyen, Rakoff